## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES STANLEY BROUSSARD, | § | |
| (TDCJ-CID #1473055) | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-10-2651 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |

### MEMORANDUM AND OPINION

The petitioner, James Stanley Broussard, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a 2007 state felony conviction for aggravated robbery with a deadly weapon. The respondent filed an answer and a motion to dismiss, (Docket Entry No. 12), with a copy of the state court record. (Docket Entry No. 11). Broussard filed a response. (Docket Entry No. 14). Based on careful consideration of the pleadings, the motion and response, the record, and the applicable law, this court grants the respondent's motion and, by separate order, enters final judgment. The reasons are set out below.

### I.    Background

A jury found Broussard guilty of the felony offense of aggravated robbery with a deadly weapon. (Cause Number 1089653). Broussard pleaded "true" to one enhancement paragraph relating to a prior conviction for possession of a prior controlled substance. (Cause Number 9403502). On November 13, 2007, the trial court sentenced Broussard to 15-year prison term. The First Court of Appeals of Texas affirmed Broussard's conviction on January 29, 2009. *Broussard*

*v. State,* No. 01-07-00987-CR, 2009 WL 214530 (Tex. App. -- Houston [1st Dist.] 2009, pet. ref'd) (not designated for publication).

The Texas Court of Criminal Appeals refused Broussard's petition for discretionary review on August 19, 2009. Broussard filed an application for state habeas corpus relief on January 4, 2010, which the Texas Court of Criminal Appeals denied without written order, on findings of the trial court, without a hearing, on May 5, 2010. *Ex parte Broussard,* Application No. 73,833-01 at cover.

On July 26, 2010, this court received Broussard's federal petition. Broussard contends that his conviction is void for the following reasons:

      (1)     appellate counsel rendered ineffective assistance by filing an *Anders* brief;

      (2)     the appellate court erred in finding that there were no arguable grounds for appeal; and

      (3)     Broussard did not have access to a law library during his direct appeal.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 7-8d).

Each ground is analyzed below.

## II.    The Applicable Legal Standards

This court reviews Broussard's petition for writ of habeas corpus under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996. 28 U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997), citing *Lindh v. Murphy*, 521 U.S. 320 (1997). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) defines "[t]he statutory authority of federal courts to issue habeas corpus relief for persons in state custody." *Premo v. Moore,* —— U.S. ——, 131 S. Ct. 733, 739 (2011). "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state

2

court, unless one of the exceptions listed in § 2254(d) obtains." *Id.*  Under § 2254(d), a federal court

may not grant habeas relief on such claims unless the state court's decision (1) "was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also*

*Cullen v. Pinholster,* —— U.S. ——, 131 S. Ct. 1388, 1398 (2011) ("hold[ing] that review under

2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the

merits"); *Riddle v. Cockrell,* 288 F.3d 713, 716 (5th Cir. 2002) (discussing § 2254(d)).  Thus,

"federal habeas relief is only merited where the state court decision is both incorrect *and* objectively

unreasonable." *Morrow v. Dretke,* 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (citing

*Williams v. Taylor,* 529 U.S. 362, 411 (2000)).  The AEDPA's provisions "ensure that state-court

convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693

(2002) (citing *Williams,* 529 U.S. at 403–04).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent

meanings. *Bell,* 535 U.S. at 694 (citing *Williams,* 529 U.S. at 404–05).  The Supreme Court has

explained that:

> [a] federal habeas court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the governing
> law set forth in our cases, or if it decides a case differently than we
> have done on a set of materially indistinguishable facts.  The court
> may grant relief under the "unreasonable application" clause if the
> state court correctly identifies the governing legal principle from our
> decisions but unreasonably applies it to the facts of the particular
> case.  The focus of the latter inquiry is on whether the state court's
> application of clearly established federal law is objectively
> unreasonable, and we stressed in *Williams* that an unreasonable
> application is different from an incorrect one.

*Id.* (internal citations omitted).

Under § 2254(d), a federal habeas court reviews only a state court's decision and not the written opinion explaining that decision. *St. Aubin v. Quarterman,* 470 F.3d 1096, 1100 (5th Cir. 2006) (citing *Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)). The state court's "ultimate decision," "not every jot of its reasoning," is to be tested for reasonableness. *Santellan v. Cockrell,* 271 F.3d 190, 193 (5th Cir. 2001). The state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza,* 540 U.S. 12, 16 (2003) (per curiam) (quoting *Early v. Packer,* 537 U.S. 3, 8 (2002)); *see also Harrington v. Richter,* —— U.S. ——, 131 S. Ct. 770, 785 (2011) (reaffirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'").

The AEDPA's deferential standard limits the federal court's role in reviewing state convictions:

> [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunction in the state criminal justice systems," not a substitute for ordinary error correction through appeal .... As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington,* 131 S. Ct. at 786–87 (citation omitted). "The AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'" *Morrow,* 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)).

The presumption of correctness also applies to adjudications made during state postconviction proceedings. *Id.* The burden to rebut the presumption of correctness remains on the petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair." *Id.* (citing *Valdez v. Cockrell,* 274 F.3d 941, 950–51 (5th Cir. 2001)). In some circumstances, findings of fact may be implied from conclusions of law. *See Valdez,* 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted); *Goodwin v. Johnson,* 132 F.3d 162, 183–84 (5th Cir. 1997).

Broussard is proceeding *pro se.* A *pro se* habeas petition is construed liberally and is not held to the same stringent and rigorous standards as pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh,* 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Broussard's state and federal habeas petitions. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## III.     The Claim of Ineffective Assistance of Appellate Counsel

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *See Evitts v. Lucey,* 469 U.S. 387 (1985). Such a claim requires the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984).

The Sixth Amendment does not require appellate counsel to raise every nonfrivolous claim available on appeal. *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983). While difficult, however, it is possible to make out a claim for ineffective assistance based on counsel's failure to raise certain issues on appeal. *Smith v. Robbins,* 528 U.S. 259, 288 (2000) ("Notwithstanding *Barnes,* it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith,* 528 U.S. at 288 (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)). If appellate counsel fails "to raise a significant and obvious issue, the failure could be viewed as deficient performance"; if the issue that was not raised "may have resulted in a reversal of the conviction, or an order for a new trial, the failure was prejudicial." 800 F.2d at 646.

To prevail on his habeas claim, Broussard must show prejudice as well as deficient performance. Prejudice us "a reasonable probability that, but for his counsel's unreasonable failure . . . he would have prevailed on his appeal." *Robbins,* 528 U.S. at 285; *see also Moreno v. Dretke,* 450 F.3d 158, 168 (5th Cir. 2006) ("When the petitioner challenges the performance of his appellate counsel, he must show that with effective counsel, there was a reasonable probability that he would have won on appeal."). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland,* 466 U.S. at 694. This requires a "'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster,* 131 S. Ct. at 1403 (quoting *Harrington v. Richter,* 562 U.S. ——, ——, 131 S. Ct. 770, 777 (2011)).

Broussard alleges that his appellate counsel failed to raise the issue of whether the prosecutor's use of peremptory challenges violated the Equal Protection Clause under *Batson v. Kentucky,* 476 U.S. 79 (1986).  (Docket Entry No. 2, Petitioner's Memorandum, p. 5).  Broussard argues that the prosecution used a peremptory challenge to strike an African-American venire person, Juror No. 26, from the panel.

The Equal Protection Clause prohibits challenging potential jurors on the basis of their race. U.S. CONST. amend. XIV; *Batson v. Kentucky,* 476 U.S. at 89.  A trial court follows a three-step process to evaluate a claim that the prosecution made a peremptory strike based on a prospective juror's race. *Snyder v. Louisiana,* 552 U.S. 472, 476 (2008).  First, a defendant must make a *prima facie* showing that the prosecution has used a peremptory challenge to remove a potential juror on account of race. *Id.; Purkett v. Elem,* 514 U.S. 765, 767 (1995).  The burden then shifts to the prosecution to come forward with a race-neutral explanation for challenging the jurors. *Snyder,* 552 U.S. at 476–77; *Batson,* 476 U.S. at 97–98.  If the prosecution offers race-neutral reasons for the strikes, the burden shifts again to the defendant to show that the race-neutral explanations for the strikes are contrived or a pretext for a racially discriminatory intent. *Shuffield v. State,* 189 S.W.3d 782, 785 (Tex. Crim. App. 2006); *Jasper v. State,* 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).  The credibility of the race-neutral explanations can be measured by "the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Miller–El v. Cockrell,* 537 U.S. 322, 339 (2003).  An appellate court will reverse a trial court's ruling on a *Batson* motion only if it is "clearly erroneous." *Snyder,* 552 U.S. at 477.

In the present case, the prosecutor offered three race-neutral reasons for striking Juror 26. The prosecutor first noted that the juror worked for MHMRA as a case manager. (Reporter's Record, Vol. III, pp. 113-14). An occupation or profession is a race-neutral explanation for a peremptory strike. *See, e.g., Tompkins v. State,* 774 S.W.2d 195, 205 (Tex. Crim. App. 1987) (postal worker); *Contreras v. State,* 56 S.W.3d 274, 279 (Tex. App. - Houston [14th Dist.] 2001, pet. ref'd) (attorney); *Lee v. State,* 949 S.W.2d 848, 850 (Tex. App. - Austin 1997, pet. ref'd) (self-employed artist); *Godine v. State,* 874 S.W.2d 197, 205 (Tex. App. -Houston [14th Dist.] 1994, no pet.) (clothes presser); *Davis v. State,* 822 S.W.2d 207, 211 (Tex. App. - Dallas 1991, pet. ref'd) (social worker).

Second, the prosecutor stated that she was uncomfortable with the fact that Juror No. 26 mistakenly claimed that he had served on a criminal jury before, but he had not. (Reporter's Record, Vol. III, pp. 113-14). Juror No. 26 explained that he simply had misunderstood the question. (*Id.* at 67). A juror's incorrect or incomplete answer on a juror information form is an acceptable race-neutral reason for a peremptory strike. *Godine v. State,* 874 S.W.2d 197, 205 (Tex. App. - Houston [14th Dist.] 1994, no pet.).

Third, the prosecutor explained that Juror No. 26 appeared to not be paying attention. He had his eyes closed much of the time. (Reporter's Record, Vol. III, p. 114). A prospective juror's demeanor and "body english" may be race-neutral explanations for exercising a peremptory strike. *Anderson v. State,* 758 S.W.2d 676, 680 (Tex. App. - Fort Worth 1988, pet. ref'd); *see also Yarborough v. State,* 983 S.W.2d 352, 357–58 (Tex. App. - Fort Worth 1998, no pet.) (upholding as race-neutral subjective explanations about prospective juror's demeanor because such explanations were undisputed).

The burden shifted to Broussard to prove to the district court, by a preponderance of the evidence, that the prosecutor's race-neutral explanations were pretextual. *See Purkett,* 514 U.S. at 767-69; *Watkins,* 245 S.W.3d at 447; *see also Keeton v. State,* 749 S.W.2d 861, 868 (Tex. Crim. App. 1988) ("Once the prosecutor has articulated a nondiscriminatory reason for challenging the black jurors, the other side can offer evidence showing that the reasons or explanations are merely a sham or pretext.").

Broussard states:

> Petitioner was denied the trial record so he could not point to specific striking of other jurors as the same as juror No.21[1] but, petitioner can recall the State did use questions that commits prospective jurors to a position, using a hypothetical or otherwise, are improper or serve no purpose, but commit the jury to guilt before hearing the evidence or facts. See Lyda V. State, 109 S.W. 3d 495. The State did not argue or rebut the prima facie case by tendering a race-neutral explanation for the strike of juror 21, but waived any opportunity to respond to the response to appointed attorney's Anders brief.

(Docket Entry No. 2, Petitioner's Memorandum, pp. 10-11).

The state trial judge had the benefit of viewing the jury panel, as well as the prosecutor's demeanor when she gave and defended her reasons for her strikes. The judge was in the best position to determine whether the prosecutor's stated reasons for striking Juror No. 26 were credible. The record provides no basis to reverse the trial judge's finding of no *Batson* challenge. *See Grant,* 325 S.W.3d at 657 ("Because the trial court's ruling requires an evaluation of the credibility and demeanor of prosecutors and venire members . . . we defer to the trial court in the absence of exceptional circumstances.").

---

[1] It appears that Broussard mistakenly referred to Juror 21. Broussard had previously consistently referred to Juror 26 in presenting his *Batson* claim.

Broussard also argues ineffective assistance because appellate counsel submitted a brief under *Anders v. California,* 386 U.S. 738, 744 (1967).   The brief stated that, in his professional opinion, there were no arguable grounds for reversal on appeal.   (Docket Entry No. 11-6).   Broussard responded *pro se*, contending that: (1) he was denied a pretrial hearing; (2) his trial counsel was ineffective in preparing for trial; (3) no gunpowder-residue test was performed; (4) no suspect-identification lineup was conducted; and (5) there were insufficient lab tests on the clothing.   (Docket Entry No. 11-4).

The First Court of Appeals found:

> The brief submitted by appellant's court-appointed counsel states his professional opinion that there are no arguable grounds for reversal on appeal and that any appeal would, therefore, lack merit. *See Anders,* 386 U.S. at 744, 87 S. Ct. at 1400.  Counsel's brief meets the minimum *Anders* requirements by presenting a professional evaluation of the record and stating why there are no arguable grounds for reversal on appeal. *See Gainous v. State,* 436 S.W.2d 137, 138 (Tex. Crim. App. 1969).  Appellant's counsel has advised the Court that he sent a copy of the *Anders* brief to appellant and notified appellant of his right to review the record and to file a pro se response.  Counsel has also requested permission to withdraw from representing appellant on appeal.   Appellant has filed a pro se response to his counsel's *Anders* brief.
>
> Upon receipt of an *Anders* brief from an appellant's court-appointed attorney who asserts that no arguable grounds for reversal on appeal exist, we must determine that issue independently by conducting our own review of the entire record. *See Anders,* 386 U.S. at 744, 87 S. Ct. at 1400 (emphasizing that reviewing court - and not appointed counsel - determines, after full examination of proceedings, whether case is "wholly frivolous"); *Stafford v. State,* 813 S.W.2d 503, 509 (Tex. Crim. App. 1991) (quoting *Anders* for this rule).   In conducting our review, we consider any pro se response that the appellant files to his appointed counsel's *Anders* brief. *See Bledsoe v. State,* 178 S.W.3d 824, 826-28 (Tex. Crim. App. 2005).

Our role in this *Anders* appeal, which includes a pro se response by appellant, is limited to determining whether arguable grounds for appeal exist. *See id.* at 826-27. If we determine that arguable grounds for appeal exist, we must abate the appeal and remand the case to the trial court to allow the court-appointed attorney to withdraw. *See id.* at 827. The trial court must then either appoint another attorney to present all arguable grounds for appeal or, if the defendant wishes, must allow the defendant to proceed pro se in the appellate court. *See id.* We do not rule on the ultimate merits of the issues raised by the appellant in his pro se response. *Id.* Rather, if we determine that there are arguable grounds for appeal, the appellant is entitled to have new counsel appointed to address the merits of the issues raised. *Id.* "Only after the issues have been briefed by new counsel may [we] address the merits of the issues raised." *Id.*

If, on the other hand, we determine from our independent review of the entire record that the appeal is wholly frivolous, we may affirm the trial court's judgment by issuing an opinion in which we explain that we have reviewed the record and have found no reversible error. *See id.* at 826-27, 828. The holding that there are no arguable grounds for appeal is subject to challenge through a petition for discretionary review filed in the Court of Criminal Appeals. *Id.* at 827 & n.6. In accordance with *Anders,* 386 U.S. at 744-45, 87 S. Ct. at 1400, and *Bledsoe,* 178 S.W.3d at 826-28, we have reviewed the entire record, appellant's appointed counsel's *Anders* brief, and appellant's pro se response to that brief, and we conclude that no arguable grounds for reversal exist.

**Conclusion**

We affirm the judgment of the trial court and grant appointed counsel's motion to withdraw.

*Broussard v. State*, No. 01-07-00987-CR, 2009 WL 214530, *1-2 (Tex. App. -- Houston [1st Dist.] 2009, pet. ref'd) (not designated for publication).

The state habeas court found:

1. The applicant fails to allege sufficient facts supporting his claim that the *Anders* brief filed by appellate counsel fell below minimum

required standards. *Ex parte Maldonado,* 688 S.W.2d 114, 116 (Tex. Crim. App. 1985);

2.  The applicant fails to allege sufficient facts supporting his claim that appellate counsel was ineffective for failing to raise a claim of trial court error. *Maldonado,* 688 S.W.2d at 116;

3.  The effective assistance of counsel standard does not impose on appellate counsel a duty to raise every "colorable" claim that may be suggested by a client, and to do so would disserve the very goal of vigorous and effective appellate advocacy. *Jones v, Barnes,* 463 U.S. 745, 754 (1983);

4.  The applicant fails to show that appellate counsel was ineffective for failing to ensure that the applicant received a copy of the trial record. *Ex parte Wilson,* 956 S.W.2d 25 (Tex. Crim. App. 1997);

5.  The applicant fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 686 (1984); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State,* 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard); *Ex parte Butler,* 884 S.W.2d 782, 783 (Tex. Crim. App. 1994) (applying the two-pronged analysis of *Strickland* to question of whether counsel rendered effective assistance on direct appeal);

6.  The totality of the representation afforded the applicant was sufficient to protect the applicant's right to reasonably effective assistance of counsel on appeal.

*Ex parte Broussard,* Application No. 73,833-01 at 28-29.

The record as a whole does not show that the state habeas court acted unreasonably. *See Pinholster,* 131 S. Ct. at 1402–03. This court finds that reasonable jurists could not disagree that the state court reasonably applied the law when it agreed with appellate counsel's determination that Broussard's appeal presented no basis for reversal. The state court was reasonable in finding

that filing an *Anders* brief was well within the requirements for effective representation.  Under the deferential AEDPA review, this court finds that the state court's conclusion that there was no ineffective assistance of appellate counsel under *Strickland* was objectively reasonable.  *See Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir. 2002).

## IV.     Procedural Bar

The respondent argues that Broussard's second ground for relief — appellate court finding no grounds for appeal — is unexhausted and procedurally barred because he did not raise it in his state habeas application or in a petition for discretionary review.   (Docket Entry No. 12, Respondent's Answer and Motion to Dismiss, p. 3).   In his petition for discretionary review, Broussard alleged that: (1) he was denied a pretrial hearing; (2) his trial counsel was ineffective in preparing for trial; (3) no gunpowder-residue test was performed; (4) no fingerprint analysis was performed; and (5) there were insufficient lab tests on the clothing.  (Docket Entry No. 11-2).   In his state habeas application, Broussard alleged that: (1) appellate counsel rendered ineffective assistance by failing to protect his client's due process right to receive the trial record; (2) the trial court denied Broussard the right to receive the trial record; (3) the First Court of Appeals denied Broussard's second extension for time to file his *pro se* response to appellate counsel's *Anders* brief; and (4) the Texas Department of Criminal Justice - Institutional Division denied his right of access to the courts.  *Ex parte Broussard,* Application No. 73,833-01 at 7-19.

Broussard did not raise ground two in his state habeas application.   Broussard is now foreclosed from bringing this claim in this successive habeas petition because of the Texas abuse of the writ doctrine. *Ex parte Carr,* 511 S.W.2d 523, 525-26 (Tex. Crim. App. 1974).   Texas strictly and regularly applied the abuse of the writ doctrine when Broussard filed his habeas

petition. *Emery v. Johnson,* 139 F.3d 191, 195, 201 (5th Cir. 1997); *see also Fearance v. Scott,* 56 F.3d 633, 642 (5th Cir. 1995).

Federal review of a claim is procedurally barred if the last state court to consider the claim clearly based its denial on the fact that a state procedural requirement was not met. *Ylst v. Nunnemaker,* 501 U.S. 797, 802-04 (1991); *Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991). Federal habeas corpus relief is unavailable in the face of a state procedural default unless the petitioner can show either (1) cause for the default and actual prejudice or (2) that the federal court's failure to consider the claim will result in a miscarriage of justice, *i.e.,* that the petitioner is actually innocent of the crime. *Sawyer v. Whitley,* 505 U.S. 333, 339-40 (1992); *Coleman,* 501 U.S. at 750; *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001).

Broussard has not shown cause, under the law, for his failure to raise this claim in his state application for habeas corpus relief or in a petition for discretionary review. *Coleman,* 501 U.S. at 753. Nor has Broussard demonstrated actual prejudice or that a "fundamental miscarriage of justice" will result from this court's failure to consider his unexhausted claim. *Harris,* 489 U.S. at 262. Ground two is procedurally barred. Because Broussard would be precluded from asserting his unexhausted claim in a successive habeas petition in Texas state court, this court need not dismiss this petition without prejudice to permit him to exhaust this claim. *Fuller v. Johnson,* 158 F.3d 903, 906 (5th Cir. 1998).

## V.   The Claim of Denial of Access to the Courts

Broussard states that he was held in the Transfer Unit for 23 months, from December 2007 to November 2009. (Docket Entry No. 2, Petitioner's Memorandum, p. 4). He argues that his

access to the courts was violated because his unit of incarceration lacked an adequate law library. (*Id.* at 13).

To prevail on a claim of denial of access to courts, a prisoner must show actual injury. "[B]efore a prisoner may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate 'that his position as a litigant was prejudiced by his denial of access to the courts.'" *McDonald v. Steward,* 132 F.3d 225, 230-31 (5th Cir. 1998) (citation omitted); *see also Lewis v. Casey,* 518 U.S. 343, 351 (1996); *Chriceol v. Phillips,* 169 F.3d 313, 317 (5th Cir. 1999). The record shows that Broussard's appellate counsel filed the *Anders* brief on May 29, 2008. Broussard filed a motion for extension of time to file a *pro se* response to the *Anders* brief on May 29, 2008. The appellate court granted Broussard's motion for extension on June 4, 2008. Broussard filed a *pro se* response to the *Anders* brief on July 14, 2008. The First Court of Appeals affirmed the conviction on January 29, 2009. Broussard fails to identify any claims he is or was unable to litigate on direct appeal. Broussard has not identified or submitted any evidence showing that his position as a litigant was prejudiced as a result of the lack of an adequate law library during the relevant period. The claim of denial of access to the courts claim lacks merit.

## VI.    Conclusion

The respondent's motion to dismiss, (Docket Entry No. 12), is granted. Broussard's petition for a writ of habeas corpus is denied. This case is dismissed. Any remaining pending motions are denied as moot.

Broussard seeks habeas relief in the form of an out-of-time appeal. The federal habeas writ provides only one remedy – the liberation of an inmate held in violation of the Constitution. *See Fay v. Noia*, 372 U.S. 391, 430-31 (1963) ("Habeas lies to enforce the right of personal

liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power . . . ."); *Smith v. Lucas*, 9 F.3d 359, 366 (5th Cir. 1993) ("[T]he writ has but one remedy – to direct the liberation of a state prisoner whose confinement violates federal law."). This court has no power to require the state courts to grant Broussard an out-of-time appeal.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a petitioner must obtain a certificate of appealability before he can appeal the district court's decision. 28 U.S.C. § 2253(c)(1). This court will grant a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make a substantial showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has denied a claim on procedural grounds, however, the petitioner must also demonstrate that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* As the Supreme Court made clear in its decision in *Miller-El v. Cockrell*, 537 U.S. 322  (2003), a certificate of appealability is "a jurisdictional prerequisite," and "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." When considering a request for a certificate of appealability, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 1042.

Because Broussard has not made the necessary showing, this court will not issue a certificate of appealability.

SIGNED on December 17, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge